MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
GENEVIEVE K. GUERTIN (State Bar No. 262479)
T. KENNEDY HELM (State Bar No. 282319)
HADDAD & SHERWIN
505 Seventeenth Street
Oakland, California 94612
Telephone: (510) 452-5500
Fax: (510) 452-5510

Attorneys for Plaintiffs
Lisa Moore and Eugene Moore

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MOORE and EUGENE MOORE, Individually and as Co-Successors in Interest of JEREMIAH EUGENE MOORE, Deceased,<br><br>        Plaintiffs,<br><br>vs.<br><br>CITY OF VALLEJO, a public entity; CITY OF VALLEJO POLICE CHIEF JOSEPH KREINS, in his individual and official capacities; OFFICER SEAN KENNEY, individually; and DOES 1–20, individually, jointly and severally,<br><br>        Defendants. | Case No. 2:14-cv-00656-JAM-KJN<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS AND PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**<br><br>Date: August 20, 2014<br>Time: 9:30 a.m.<br>Location: Courtroom 6 |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................1

   A.   Statement of Facts ....................................................................................1

   B.   Procedural history ....................................................................................4

III.   STANDARD OF REVIEW ...................................................................................5

IV.   REQUEST FOR JUDICIAL NOTICE ................................................................9

V.    ARGUMENT ......................................................................................................10

   A.   The FAC's Count One Adequately Pleads Three Claims: Fourth Amendment Survival and Wrongful Death Claims, and Plaintiffs' Personal Federal Claim for the Violation of Plaintiffs' First and Fourteenth Amendment Rights to Familial Association. ...................10

     1.  Plaintiffs' Fourth Amendment Claim Contains Detailed Factual Allegations Incorporated By Reference. ...................................................................................11

     2.  Defendants Do Not Challenge Count One's Well-Pleaded Claim, Under the Fourteenth and First Amendments, For Deprivation of Plaintiffs' Right To Familial Association With Their Son, Jeremiah. .............................................................................14

   B.   Plaintiffs' Second Cause of Action Sufficiently Pleads A *Monell* Claim Against the City of Vallejo and a Claim of Supervisory Liability Against Chief Kreins In His Individual Capacity ..................................................................................15

     1.  Plaintiffs' Second Cause of Action Sufficiently Pleads a *Monell* Claim ...........................15

     2.  Chief Kreins Has Not Moved to Dismiss The Supervisory-Liability Claim Against Him In His Individual Capacity Contained In Count Two ...........................................................22

   C.   Plaintiffs' Government Tort Claim Contains Facts Supporting Counts Four, Five, Six, and Seven, Which Contain Well-Pleaded Claims Under California Law.................................23

VI.   CONCLUSION ..................................................................................................28

# TABLE OF AUTHORITIES

## Federal Cases

*A.E. ex rel. Hernandez v. County of Tulare*,
  666 F.3d 631 (9th Cir. 2012)................................................................15

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*,
  499 F.3d 663 (7th Cir. 2007)..................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................5, 6

*Baldain v. America Home Mortgage Servicing, Inc.*,
  No. CIV. S-09-0931 LKK/GGH, 2010 U.S. Dist. LEXIS 5671 (E.D. Cal. Jan. 5, 2010) .............8

*Balistreri v. Pacifica Police Department*,
  901 F.2d 696 (9th Cir. 1988)..................................................................5

*Barker v. Riverside County Office of Education*,
  584 F.3d 821 (9th Cir. 2009)..................................................................7

*Bass v. City of Fremont*,
  No. C12-4943 TEH, 2013 U.S. Dist. 32590 (N.D. Cal. Mar. 8, 2013)........................................19

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007).........................................................................5, 6

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007)................................................................27

*Board of Directors v. Rotary Club*,
  481 U.S. 537 (1987) ........................................................................14

*Chaudry v. City of Los Angeles*,
  751 F.3d 1096 (9th Cir. 2014)...............................................................27

*Christie v. Iopa*,
  176 F.3d 1231 (9th Cir. 1999)...............................................................22

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ....................................................................19, 21

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) ........................................................................22

*Clouthier v. County of Contra Costa*,
  591 F.3d 1232 (9th Cir. 2010)...................................................15, 16, 19, 21

*Conti v. City of Fremont*,
  919 F.2d 1385 (9th Cir. 1990)...............................................................15

*Cooley v. City of Vallejo*,
  No. 2:12-cv-0591 LKK AC P .............................................................3, 10

*Cormier v. All American Asphalt*,
    458 F. App'x 620 (9th Cir. 2011)........................................................................6

*Curnow v. Ridgecrest Police*,
    952 F.2d 321 (9th Cir. 1991).............................................................................15

*De la Torre v. City of Salinas*,
    No. C-09-00626 RMW, 2010 U.S. Dist. LEXIS 97725 (N.D. Cal. Sept. 17, 2010) ...................15

*Dorger v. City of Napa*,
    No. 12-cv-440 YGR, 2012 U.S. Dist. LEXIS 124551 (N.D. Cal. Aug. 31, 2012) .....16, 20, 21, 22

*East v. City of Richmond*,
    No. C 10-2392 SBA, 2010 U.S. Dist. LEXIS 117367 (N.D. Cal. Nov. 3, 2010) ........................19

*Elan Microelectronics Corporation v. Apple, Inc.*,
    No. C 09-01531 RS, 2009 U.S. Dist. LEXIS 83715 (N.D. Cal. Sept. 14, 2009)...........................8

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ..............................................................................................6

*Estate of Anton Barrett, et al. v. City of Vallejo, et al.*,
    No. 2:13-cv-00846-JAM-CKD .......................................................................3, 10

*Flippin v. City of Vallejo, et al.*,
    No. 2:13-cv-01381-KJN ...................................................................................3, 10

*Gillette v. Delmore*,
    979 F.2d 1342 (9th Cir. 1992)............................................................................21

*Hicks v. City of Vallejo, et al.*,
    No. 2:14-cv-00669-LKK-DAD ........................................................................3, 10

*Hightower v. Tilton*,
    No. C08-1129-MJP, 2012 U.S. Dist. LEXIS 50362 (E.D. Cal. Apr. 10, 2012) ...........................8

*Hodgers-Durgin v. De La Vina*,
    199 F.3d 1037 (9th Cir. 1999)...........................................................................14

*Howard v. City of Vallejo*,
    No. CIV. S-13-1439 LKK/KJN, 2013 U.S. Dist. LEXIS 161926 (E.D. Cal. Nov. 13, 2013) ......18

*Hunter v. County of Sacramento*,
    652 F.3d 1225 (9th Cir. 2011)......................................................................16, 17

*IDC v. City of Vallejo, et. al.*,
    2:13-cv-01987-DAD .......................................................................................3, 10

*IDC v. City of Vallejo*,
    No. 2:13-cv-1987 DAD, 2014 U.S. Dist. LEXIS 78487 (E.D. Cal. June 6, 2014)..........12, 17, 18

*In re Flash Memory Antitrust Litigation*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...............................................................6

*Intravisual Inc. v. Fujitsu Microelectronics America Inc.*,
   2:10-CV-90-TJW, 2011 U.S. Dist. LEXIS 28100 (E.D. Tex. Mar. 18, 2011) ..............................8

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*,
   499 F.3d 1048 (9th Cir. 2007)..............................................................................................9

*Isayeva v. County of Sacramento*,
   No. 2:13-CV-02015-KJM-KJN, 2014 U.S. Dist. LEXIS 67917 (E.D. Cal. May 16, 2014)...........5

*Johnson, et al. v. City of Vallejo, et al.*,
   No. 2:13-cv-01072-JAM-KJN .......................................................................................3, 10

*Kelson v. City of Springfield*,
   767 F.2d 651 (9th Cir. 1985)................................................................................................14

*Lacey v. Maricopa County (Arpaio)*,
   693 F.3d 896 (9th Cir. 2012)..................................................................................................7

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
   507 U.S. 163 (1993) ..............................................................................................................8

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001)................................................................................................15

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000)................................................................................................9

*Microsoft Corporation v. Phoenix Solutions, Inc.*,
   741 F. Supp. 2d 1156 (C.D. Cal. 2010)..................................................................................8

*Monell v. City Department of Social Services*,
   436 U.S. 658 (1978) ............................................................................................................16

*Moore et al. v. City of Vallejo, et al.*,
   2:14-cv-00656-JAM-KJN ..............................................................................................3, 10

*N.R., a minor, et al. v. City of Vallejo, et al.*,
   No. 2:13-cv-02060-JAM-KJN ........................................................................................3, 10

*Oviatt v. Pearce*,
   954 F.2d 1470 (9th Cir. 1991)..............................................................................................21

*Porter v. Osborn*,
   546 F.3d 1131 (9th Cir. 2008)..............................................................................................15

*Price v. Sery*,
   513 F.3d 962 (9th Cir. 2008)................................................................................................16

*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984) ............................................................................................................15

*Robinson v. Solano County*,
   278 F.3d 1007 (9th Cir. 2002)..............................................................................................27

*Santosky v. Kramer*,

455 U.S. 745 (1982) ..................................................................................................14

*Sheehan v. City and County of San Francisco,*
743 F.3d 1211 (9th Cir. 2014) ..............................................................................20

*Shelley v. County of San Joaquin,*
954 F. Supp. 2d 999 (E.D. Cal. 2013) ..................................................................15

*Skilstaf, Inc. v. CVS Caremark Corp.,*
669 F.3d 1005 (9th Cir. 2012) ...........................................................................5, 9

*Smith v. City of Fontana,*
818 F.2d 1411 (9th Cir. 1987) ..............................................................................14

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011) ................................................................................7

*Swierkiewicz v. Sorema, N.A.,*
534 U.S. 506 (2002) ................................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) .............................................................................................5, 9

*Ulrich v. City & County of San Francisco,*
308 F.3d 968 (9th Cir. 2002) ................................................................................16

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) ..................................................................................9

*Vasquez v. Los Angeles County,*
487 F.3d 1246 (9th Cir. 2007) ................................................................................5

*Williams v. Kenney,*
No. 2:07-cv-00100-LKK-EFB ...........................................................................3, 10

*Wise v. Nordell,*
No. 12-CV-1209 IEG (BGS), 2012 U.S. Dist. LEXIS 128656 (S.D. Cal. Sept. 10, 2012) .........19

*Wolf v. Colorado,*
338 U.S. 25 (1949) ................................................................................................12

*Young v. City of Visalia,*
687 F. Supp. 2d 1155 (E.D. Cal. 2010) ..................................................................9

*Zamani v. Carnes,*
491 F.3d 990 (9th Cir. 2007) .............................................................................11, 23

*Ziptronix Inc. v. Omnivision Technologies, Inc.,*
No. C 10-5525 SBA, 2011 U.S. Dist. LEXIS 129275 (N.D. Cal. Nov. 8, 2011) ..........................8

**California Cases**

*Austin B. v. Escondido Union School District*,
    149 Cal. App. 4th 860 (2007)..................................................................28

*Blair v. Supererior Court (Department of Transportation)*,
    218 Cal. App. 3d 221 (1990)....................................................25, 26, 27

*City of San Jose v. Superior Court*,
    12 Cal. 3d 447 (1974)..................................................................25

*Hernandez v. City of Pomona*,
    46 Cal. 4th 501 (2009)..................................................................27

*Martinez v. County of Los Angeles*,
    78 Cal. App. 3d 242 (1978)..........................................................24

*Minsky v. City of Los Angeles*,
    11 Cal. 3d 113 (1974)..................................................................25

*Nelson v. State of California*,
    139 Cal. App. 3d 72 (1982)......................................................23, 24

*Stevenson v. San Francisco Housing Authority*,
    24 Cal. App. 4th 269 (1994)........................................................26

*Stockett v. Association of California Water Agencies Joint Powers Insurance Authority*,
    34 Cal. 4th 441 (2004)..........................................................25, 26, 27

*Turner v. State of California*,
    232 Cal. App. 3d 883 (1991)........................................................26

**Federal Statutes**

42 United States Code § 1983 ....................................................11, 14, 27

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................5, 8, 9

Federal Rule of Civil Procedure 15(a)(2) ........................................9

Federal Rule of Civil Procedure 8(a)(2)..........................................6

Federal Rule of Civil Procedure 84 ................................................8

Federal Rule of Evidence 201(b) ..................................................9

Federal Rule of Evidence 201(c)(2) ................................................9

Federal Rule of Evidence 201(d) ..................................................9

**California Statutes**

California Civil Code § 51(b).............................................................................27

California Civil Code § 51(e).............................................................................27

California Civil Code § 51.7 .................................................................23, 27, 28

California Civil Code § 52.1 .......................................................................23, 27

California Code of Civil Procedure § 377.20.....................................................11

California Code of Civil Procedure § 377.60.....................................................11

California Government Code § 845.6..................................................................23

California Government Code § 910 ..................................................................4, 24

California Government Code § 910.2 ...............................................................4, 24

California Government Code § 910.4 ...............................................................4, 24

**Other Authorities**

CACI No. 3023 ...................................................................................................28

## I.      INTRODUCTION

The City of Vallejo, Vallejo Police Department Officer Sean Kenney, and Vallejo Police Chief Joseph Kreins, have moved to dismiss certain claims in this civil rights, wrongful death, and survival action brought by Eugene and Lisa Moore, parents and co-successors in interest of their son Jeremiah Moore, whom Kenney and other as-yet unidentified defendants shot and killed on October 21, 2012.  In arguing that Plaintiffs' complaint should be dismissed under *Iqbal* and *Twombly*, the motion repeats variations, in phrasing and typography, of the following refrain: the complaint "fails to state facts" (Docket No. ("Doc.") 21, Defendants' Motion to Dismiss, p. 1); "fails to state sufficient facts" (Doc. No. 21, p. 1); is "completely devoid of *any factual* content" (Doc. No. 21, p. 8); "is unsupported by any facts" (Doc. No. 21, p. 10); is "wholly unsupported by any facts" (Doc. No. 21, p. 11); "fails to state facts" (Doc. No. 21, pp. 11, 13); "contains no facts" (Doc. No. 21, p. 14); "contains <u>no facts</u>" (Doc. No. 21, p. 15); and has "no *facts*" (Doc. No. 21, p. 15).  But repeating this refrain often enough does not make it true—Plaintiffs have stated enough facts to suggest that they are plausibly entitled to relief on their claims, and this Court should therefore deny the motion.

## II.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.      Statement of Facts

On or about October 21, 2012, at about 1:30 a.m., unidentified members of the Vallejo Police Department (VPD), including, on information and belief, Defendant Officer Sean Kenney, fatally shot Jeremiah Eugene Moore at his house at 2504 Alameda Street in Vallejo, California. (Docket No. ("Doc.") 13, First Amended Complaint, ¶ 18).

Before arriving, the Defendant VPD officers had been informed and knew that Jeremiah suffered from developmental disabilities including an Autism-Spectrum Disorder, mental illness, and/or emotional disturbance. (Doc. No. 13, ¶ 19).  Upon the VPD officers' arrival, Jeremiah was

walking naked in the vicinity of the front steps of his home.  (Doc. No. 13, ¶ 20).  Jeremiah had no weapon in his hands, and he posed no significant or immediate threat of death or serious bodily harm to Defendant VPD officers or others at the time he was shot.  (Doc. No. 13, ¶ 20).

One or more Defendant VPD officers commanded Jeremiah to get on the ground while they pointed guns at him.  (Doc. No. 13, ¶ 21).  Jeremiah said something to the effect of "Okay, Okay, Okay."  (Doc. No. 13, ¶ 21).  Jeremiah suffered from an Autism-Spectrum Disorder that caused him to move his hands and arms when he was nervous.  (Doc. No. 13, ¶ 21).  As Jeremiah moved his hands and arms due to his Autism-Spectrum Disorder, the Defendant VPD officers fired multiple, deliberate gunshots at Jeremiah without warning, causing great pain and suffering to Jeremiah, as well as causing his death.  (Doc. No. 13, ¶ 22).  Jeremiah had not made any movement or gesture under the circumstances that a reasonable officer would perceive as posing an immediate threat to justify the use of deadly force.  (Doc. No. 13, ¶ 21).  At all times, Jeremiah had nothing in his hands, was naked, disabled, and emotionally/mentally disturbed, and he did not pose a significant and immediate threat of death or serious physical injury to defendants, officers, or others.  (Doc. No. 13, ¶ 23).

After the incident, Defendant officers and the VPD falsely reported that Jeremiah was threatening an officer with a long gun inside the house when he was shot while standing inside the house.  (Doc. No. 13, ¶ 23).  But in fact Jeremiah was unarmed, naked, with nothing in his hands, and was outside of his house when the defendant officer(s) shot him.  (Doc. No. 13, ¶ 23).  At all material times, defendant VPD officers knew and/or had reason to know that Jeremiah was a disabled (Autistic), mentally ill, and/or emotionally disturbed person.  (Doc. No. 13, ¶ 24).  The defendants failed to follow generally accepted law enforcement standards and training for safely handling Jeremiah as a disabled, mentally ill, and/or emotionally disturbed person.  (Doc. No. 13, ¶ 24).

Plaintiffs have alleged, on information and belief, that before the shooting of their son Jeremiah, Defendant Kenney, and other VPD officers, had shot other individuals who did not pose an immediate threat of death or serious bodily injury to anyone.  (Doc. No. 13, ¶ 35).  Those other victims of such shootings were also disabled and/or mentally incapacitated at the time.  (Doc. No. 13, ¶ 35).  Like the present shooting those other shootings were caused by VPD officers' provocative and unlawful conduct leading up to such shootings.  (Doc. No. 13, ¶ 35).  Moreover, such shootings were known to VPD policymakers including Defendant Chief of Police Kreins, and it was apparent and known to such policymakers and the VPD that such shootings were unlawful and outside of Officer Kenney's and other VPD officers' police-academy training and generally accepted law enforcement standards.  (Doc. No. 13, ¶ 35).  Despite such information, VPD policymakers and the VPD took no action to correct deficiencies in VPD training programs and VPD policies and procedures that allowed and encouraged such unlawful uses of deadly force, and specifically took no action to adequately investigate, supervise, discipline, or train Defendant Kenney and other VPD officers.  (Doc. No. 13, ¶ 35).

As of July 21, 2014, both the City of Vallejo and Sean Kenney have been named as co-defendants in nine civil rights cases involving claims of excessive force, including this case, in this Court: *Moore et al. v. City of Vallejo, et al.*, 2:14-cv-00656-JAM-KJN; *Hicks v. City of Vallejo, et al.*, No. 2:14-cv-00669-LKK-DAD; *Johnson, et al. v. City of Vallejo, et al.*, No. 2:13-cv-01072-JAM-KJN; *N.R., a minor, et al. v. City of Vallejo, et al.*, No. 2:13-cv-02060-JAM-KJN (consolidated, on February 24, 2014, with No. 2:13-cv-01072-JAM-KJN); *IDC v. City of Vallejo*, et. al., 2:13-cv-01987-DAD; *Estate of Anton Barrett, et al. v. City of Vallejo, et al.*, No. 2:13-cv-00846-JAM-CKD; *Flippin v. City of Vallejo, et al.*, No. 2:13-cv-01381-KJN; *Cooley v. City of Vallejo*, No. 2:12-cv-0591 LKK AC P; and *Williams v. Kenney*, No. 2:07-cv-00100-LKK-EFB.

1   Between 2007 and 2012, there were thirteen fatal officer-involved shootings—including the

2   shooting of Jeremiah Moore—by Vallejo Police Department officers. (Declaration of T. Kennedy

3   Helm In Support of Plaintiffs' Opposition to Defendants' Motion To Dismiss And Plaintiffs'

4   Request for Judicial Notice, Exhibits A–M).

5   The shooting of Jeremiah Moore was Defendant Kenney's third fatal shooting in five

6   months—Defendant Kenney shot Anton Barrett on May 28, 2012; Mario Romero on September 2,

7   2012; and Jeremiah Moore on October 21, 2012.  Alex Emslie, *Questions Surround Surge in*

8   *Vallejo Police Shootings*, KQED News Fix (May 20, 2014), http://blogs.kqed.org/newsfix/vallejo-

9   police-officer-named-in-three-fatal-shootings.

10

11

12   **B.      Procedural history**

13   On March 22, 2013, Plaintiffs timely filed their own claim for damages pursuant to

14   California Government Code §§ 910, 910.2 and 910.4 against the City of Vallejo using the City of

15   Vallejo's official form.  (Doc. 21, Ex. 1).  On October 11, 2013, Plaintiffs, proceeding pro se, sued

16   the City of Vallejo, the Vallejo Police Department, and Does 1–50 in the Superior Court of

17   California, County of Solano.  (Ex. X).  On March 11, 2014, the City of Vallejo and the Vallejo

18   Police Department removed Plaintiffs' lawsuit to the United States District Court for the Eastern

19   District of California.  (Doc. No. 2-1).  On March 18, 2014, the City of Vallejo and the Vallejo

20   Police Department moved to dismiss Plaintiffs' lawsuit.  (Doc. No. 8).  Then, on April 18, 2014,

21   Haddad & Sherwin filed a notice of appearance to represent Plaintiffs in this action.  (Doc. No. 10).

22   Magistrate Judge Newman vacated all pending dates and referred this case back to this Court.

23   (Doc. 11).  Now represented by counsel, on April 29, 2014, Plaintiffs filed a First Amended

24   Complaint (FAC).  (Doc. No. 13).  Plaintiffs subsequently filed Declarations of their legal status as

25   co-successors in interest for Jeremiah.  (Doc. Nos. 17 and 18).  On May 16, 2014, this Court entered

26

27

28

the parties' stipulated order allowing Defendants to file a responsive pleading by June 30, 2014.

(Doc. No. 19).  This motion to dismiss followed on June 30, 2014.  (Doc. No. 21).

## III.    STANDARD OF REVIEW

"Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Isayeva v. County of Sacramento*, No. 2:13-CV-02015-KJM-KJN, 2014 U.S. Dist. LEXIS 67917, at \*5 (E.D. Cal. May 16, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  A district court reviewing a complaint under Rule 12(b)(6) must "construe the complaint in a light most favorable to the non[-]moving party," *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007), and it "'must consider the complaint in its entirety[.]'" *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  A 12(b)(6) dismissal of a claim is proper only where a claim lacks either a cognizable legal theory, or fails to allege sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), the Court held that "a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations."  The factual allegations must only "be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).  The *Twombly* Court explicitly noted that it was not imposing a probability requirement on plaintiffs at the pleading stage. *Id.*  Rather, the claims must be "plausible," which "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the allegations. *Id.*  The Court explained:  "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the

facts alleged is improbable, and that a recovery is very remote and unlikely."  *Id.* at 556 (quotations omitted).

Two weeks after deciding *Twombly*, the Supreme Court issued *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), and put to rest any question that *Twombly* overruled Rule 8(a)'s general notice-pleading scheme:

> *Federal Rule of Civil Procedure 8(a)(2)* requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

*Id.* at 93 (citing *Twombly,* 550 U.S. at 555) (internal quotations omitted).  *See also, Cormier v. All American Asphalt*, 458 F. App'x 620, 621 (9th Cir. 2011) ("*Swierkiewicz* is still good law after *Twombly* and *Iqbal*. This is supported by the language of *Twombly*, which rejected the argument that its analysis 'runs counter to *Swierkiewicz*.' *Twombly,* 550 U.S. at 569–70.").

Read together, *Twombly* and *Erickson* mean "that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).  *See also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141, n.5 (N.D. Cal. 2009).

This is still the case after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Supreme Court granted a motion to dismiss where some allegations were "bare assertions" not entitled to the presumption of truth and the remaining allegations did not plausibly suggest an entitlement to relief. The Court held: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quotations omitted).

In *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), the Ninth Circuit noted two principles common to *Swierkiewicz*, *Erickson*, *Twombly* and *Iqbal*:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

The Court went on to explain *Twombly* and *Iqbal's*, "plausibility" requirement as follows:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under *Rule 12(b)(6)*. Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only "plausibly suggest an entitlement to relief."

*Id.* at 1216–17 (citing *Iqbal*, 129 S. Ct. at 1951) (emphasis in original).

More recently, the *en banc* Ninth Circuit explained: "*Iqbal* demands more of plaintiffs than bare notice pleading, *see Iqbal*, 556 U.S. at 677-78; *Twombly,* 550 U.S. at 562-63, but it does not require us to flyspeck complaints looking for any gap in the facts." *Lacey v. Maricopa County (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (en banc).

*Twombly* and *Iqbal* did not change the fundamental tenet that the Court should draw all reasonable inferences from the facts alleged in the plaintiff's favor. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). When the allegations are capable of multiple inferences, the court must adopt whichever plausible inference supports a valid claim. *Starr*, 652 F.3d at 1216.

Additionally, as the *Swierkiewicz* Court noted, "[t]hese requirements are exemplified by the Federal Rules of Civil Procedure Forms, which 'are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate.' *Fed. Rule Civ. Proc.*

84." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513, n.4. (2002).  "For example, Form 9 sets

forth a complaint for negligence in which plaintiff simply states in relevant part: 'On June 1, 1936,

in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a

motor vehicle against plaintiff who was then crossing said highway.'"  *Id.*

Courts are required to follow Rule 84 and the Forms as long as Congress has declined to

amend them.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507

U.S. 163, 168 (1993) (changes to the Federal Rules "must be obtained by the process of amending

the Federal Rules, and not by judicial interpretation.").  Post-*Iqbal* district courts continue to

endorse pleading consistent with Rule 84 and the Forms.  *See, e.g., Ziptronix Inc. v. Omnivision

Tech., Inc.*, No. C 10-5525 SBA, 2011 U.S. Dist. LEXIS 129275, at *9 (N.D. Cal. Nov. 8, 2011);

*Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010); *Baldain v.

Am. Home Mortg. Servicing, Inc.*, No. CIV. S-09-0931 LKK/GGH, 2010 U.S. Dist. LEXIS 5671, at

*37 (E.D. Cal. Jan. 5, 2010); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009

U.S. Dist. LEXIS 83715, at *6–7 (N.D. Cal. Sept. 14, 2009).

Moreover, pleading facts "'on information and belief' is sufficient to survive a motion to

dismiss as long as the other *Iqbal-Twombly* factors are satisfied."  *Hightower v. Tilton*, No. C08-

1129-MJP, 2012 U.S. Dist. LEXIS 50362, at *8 (E.D. Cal. Apr. 10, 2012); *see also Intravisual Inc.

v. Fujitsu Microelectronics Am. Inc.*, 2:10-CV-90-TJW, 2011 U.S. Dist. LEXIS 28100 at *18 (E.D.

Tex. Mar. 18, 2011) (holding that allegations pleaded on "information and belief" should be

reviewed in the same way as all factual allegations in a complaint and that the mere fact that factual

allegations begin with the statement "on information and belief" does not automatically render them

insufficient.).

In ruling on a motion to dismiss, a district court "'must consider the complaint in its entirety

as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss,

in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Lastly, unless amendment would be futile, a district court should freely grant the plaintiff leave to amend the complaint.  Fed. R. Civ. P. 15(a)(2).  "If a Rule 12(b)(6) motion to dismiss is granted, '[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1161 (E.D. Cal. 2010) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

## IV.    REQUEST FOR JUDICIAL NOTICE

A court may take judicial notice at any stage of the proceeding, Fed. R. Evid. 201(d), and "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Moreover, a "'court may take judicial notice of matters of public records without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.'"  *Skilstaf, Inc.*, 669 F.3d at 1016 n.9 (quoting *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation and internal quotation marks omitted)); *see also United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (holding that a court may consider documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment).  A fact is "not subject to reasonable dispute" where the fact either: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Here, in support of its *Monell* claim, Plaintiffs ask this Court to take judicial notice of the following facts from sources whose accuracy cannot reasonably be questioned (including this

Court's docket, the Solano County District Attorney's Office, and KQED).  First, that as of July 21, 2014, both the City of Vallejo and Sean Kenney have been named as co-defendants in nine civil rights cases involving claims of excessive force, including this case, in this Court: *Moore et al. v. City of Vallejo, et al.*, 2:14-cv-00656; *Hicks v. City of Vallejo, et al.*, No. 2:14-cv-00669-LKK-DAD; *Johnson, et al. v. City of Vallejo, et al.*, No. 2:13-cv-01072-JAM-KJN; *N.R., a minor, et al. v. City of Vallejo, et al.*, No. 2:13-cv-02060-JAM-KJN (consolidated, on February 24, 2014, with No. 2:13-cv-01072-JAM-KJN); *IDC v. City of Vallejo*, et. al.*, 2:13-cv-01987-DAD; *Estate of Anton Barrett, et al. v. City of Vallejo, et al.*, No. 2:13-cv-00846-JAM-CKD; *Flippin v. City of Vallejo, et al.*, No. 2:13-cv-01381-KJN; *Cooley v. City of Vallejo*, No. 2:12-cv-0591 LKK AC P; and *Williams v. Kenney*, No. 2:07-cv-00100-LKK-EFB.

Second, that between 2007 and 2012, there were thirteen fatal officer-involved shootings—including the shooting of Jeremiah Moore—by Vallejo Police Department officers. (Declaration of T. Kennedy Helm In Support of Plaintiffs' Opposition to Defendants' Motion To Dismiss And Plaintiffs' Request for Judicial Notice, Exhibits A–M).

Third, that the shooting of Jeremiah Moore was Defendant Kenney's third fatal shooting in five months—Defendant Kenney shot Anton Barrett on May 28, 2012; Mario Romero on September 2, 2012; and Jeremiah Moore on October 21, 2012.  Alex Emslie, *Questions Surround Surge in Vallejo Police Shootings*, KQED News Fix (May 20, 2014), http://blogs.kqed.org/newsfix/vallejo-police-officer-named-in-three-fatal-shootings.

## V.     ARGUMENT

**A.     The FAC's Count One Adequately Pleads Three Claims: Fourth Amendment Survival and Wrongful Death Claims, and Plaintiffs' Personal Federal Claim for the Violation of Plaintiffs' First and Fourteenth Amendment Rights to Familial Association.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Count One of Plaintiffs' complaint adequately pleads two distinct claims under 42 U.S.C. § 1983 against Defendant Kenney and Does 1–20.  The first claim, which Defendants have moved to dismiss, arises under the Fourth Amendment, and it asserts that Defendant Kenney (and Does 1–20) violated Jeremiah Moore's rights, under the Fourth Amendment (as incorporated by the Fourteenth Amendment), to be free from:  unreasonable searches and seizures; excessive and unreasonable force in the course of arrest or detention; and unlawful deadly force.  (Doc. No. 13, ¶ 29(a)–(c). Defendants do not challenge either Plaintiffs' standing to bring the Fourth Amendment claim pursuant to California Code of Civil Procedure § 377.20 (survival claim) or the Fourth Amendment claim as the "wrongful act" for purposes of California Code of Civil Procedure § 377.60 (wrongful death claim).[1]  Lastly, Count One pleads a claim asserting that Jeremiah's killing violated Plaintiffs' personal rights, under the First and Fourteenth Amendments, to be free from wrongful government interference with familial relationships.  (Doc. No. 13, ¶¶ 28–33).

### 1.   Plaintiffs' Fourth Amendment Claim Contains Detailed Factual Allegations Incorporated By Reference.

The first claim is that Defendant Kenney (and Does 1–20) violated Jeremiah Moore's right under the Fourth Amendment to be free from: unreasonable searches and seizures; excessive and unreasonable force in the course of an arrest or detention; and unlawful deadly force.  (Doc. No. 13, ¶ 29 (a)–(c)).  Defendants' attack on this claim is twofold.

First, Defendants argue that the claim's reference to the Fourteenth Amendment makes the claim subject to dismissal, because "[t]he Fourth Amendment provides an explicit textual source of protection against unlawful seizures, thus all claims for pretrial deprivations of liberty must arise

---

[1] For that reason, Plaintiffs do not brief that issue.  If the defendants' reply to Plaintiffs' opposition to the motion to dismiss raises an argument not raised in the motion to dismiss, then the district court should not consider that argument.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (holding that the "district court need not consider arguments raised for the first time in a reply brief.")

under the Fourth Amendment and not the more generalized parameters of the Fourteenth

Amendment." (Doc. No. 21, at p. 10). It is true that Fourth Amendment sets the applicable

standards for seizure of a person and use of force. But paragraph 29(a)–(c) merely cites the

Fourteenth Amendment for the incontrovertible reason that the Fourteenth Amendment applies the

Fourth Amendment to the states. *Wolf v. Colorado*, 338 U.S. 25 (1949).

Second, Defendants argue, under *Iqbal*, that the Fourth Amendment claim is "completely

devoid of *any factual content*." (Doc. No. 21, at p. 8). To support this argument, Defendants

misleadingly quote only Count One's paragraph 29(a)–(c), which gives the impression that

paragraph 29 contains the entirety of the claim. But the preceding paragraph—which Defendants'

motion does not quote or even acknowledge—states that Plaintiffs "reallege each and every

paragraph in this complaint as if fully set forth here." (Doc. No. 13, ¶ 28). Paragraph 28, then,

explicitly incorporates by reference the detailed factual allegations contained in the rest of the FAC.

Defendants have used this tactic—of ignoring a complaint's detailed factual allegations

incorporated by reference—to try to persuade this Court to dismiss a Fourth Amendment claim

before, but it has failed. *See IDC v. City of Vallejo*, No. 2:13-cv-1987 DAD, 2014 U.S. Dist. LEXIS

78487, at *7 (E.D. Cal. June 6, 2014) (Defendants, including Kenney, argued that the complaint's

Fourth-Amendment claim was "completely devoid of facts," but the court noted that the plaintiff's

Fourth Amendment claim explicitly re-alleged and incorporated by reference the section containing

the plaintiff's factual allegations).

This tactic should fail here, too, because Plaintiffs' Fourth Amendment claim specifically

incorporates the factual content pleaded in the entire complaint, which states a claim that Defendant

Kenney (and Does 1–20) violated Jeremiah's Fourth Amendment rights. The FAC states that on or

about October 21, 2012, at about 1:30 a.m., unidentified members of the Vallejo Police Department

(VPD), including, on information and belief, Defendant Officer Sean Kenney, fatally shot Jeremiah

Eugene Moore at his house at 2504 Alameda Street in Vallejo, California.  (Doc. No. 13, 18).  Upon the VPD officers' arrival, Jeremiah was walking naked in the vicinity of the front steps of his home. (Doc. No. 13, ¶ 20).  Jeremiah had no weapon in his hands, and he posed no significant or immediate threat of death or serious bodily harm to Defendant VPD officers or others at the time he was shot.  (Doc. No. 13, ¶ 20).

The FAC alleges further facts showing that Defendant Kenney (and Does 1–20) violated Jeremiah's Fourth Amendment rights by alleging the following.  One or more Defendant VPD officers commanded Jeremiah to get on the ground while they pointed guns at him.  (Doc. No. 13, ¶ 21).  Jeremiah said something to the effect of "Okay, Okay, Okay."  (Doc. No. 13, ¶ 21).  Jeremiah suffered from an Autism-Spectrum Disorder that caused him to move his hands and arms when he was nervous.  (Doc. No. 13, ¶ 21).  As Jeremiah moved his hands and arms due to his Autism Spectrum Disorder, the Defendant VPD officers fired multiple, deliberate gunshots at Jeremiah without warning, causing great pain and suffering to Jeremiah, as well as causing his death.  (Doc. No. 13, ¶ 22).  Jeremiah had not made any movement or gesture under the circumstances that a reasonable officer would perceive as posing an immediate threat to justify the use of deadly force. (Doc. No. 13, ¶ 21).  At all times, Jeremiah had nothing in his hands, was naked, disabled, and emotionally/mentally disturbed, and he did not pose a significant and immediate threat of death or serious physical injury to defendants, officers, or others.  (Doc. No. 13, ¶ 23).

Plaintiffs pled these facts notwithstanding Defendants' best efforts to prevent Plaintiffs from having any facts to plead: "Despite Plaintiffs' multiple requests for records, Defendants have not provided Plaintiffs with information concerning this shooting, including the names of the involved police officers, any police reports, records of any investigation, or recordings of this incident." (Doc. No. 13, ¶9).

1      Accepting these detailed factual allegations as true, and construing them in the light most

2 favorable to Plaintiffs—as this Court must—means that Plaintiffs have pled more than enough facts

3 to show that Kenney and others violated Jeremiah's Fourth Amendment rights.  This claim has

4 facial plausibility because Plaintiffs have pled enough factual content to allow this Court to "draw

5 the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," *Ashcroft v.*

6 *Iqbal*, 556 U.S. 6662, 678 (2009), the death of their son, Jeremiah.

 

                **2.**      **Defendants Do Not Challenge Count One's Well-Pleaded Claim, Under the Fourteenth and First Amendments, For Deprivation of Plaintiffs' Right To Familial Association With Their Son, Jeremiah.**

12      Defendants object to the Fourteenth Amendment as any basis for Plaintiffs' claims that

13 Defendants used unconstitutional deadly force.  Defendants fail to recognize that Count One

14 contains a well-pleaded claim that Defendant Kenney (and Does 1–20) violated Plaintiffs' "right to

15 be free from wrongful government interference with familial relationships, and Plaintiffs' right to

16 companionship, society and support of each other," as secured by the First and Fourteenth

17 Amendments.  (Doc. No. 13, ¶ 29(d)).  This claim is well-recognized:

> It is well established that a parent has a "fundamental liberty interest" in "the companionship and society of his or her child" and that "the state's interference with that liberty interest without ***due process*** of law is remediable under [42 U.S.C. §  ] 1983."  *Kelson v. City of Springfield*, 767 F.2d 651, 654–55 (9th Cir. 1985) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982)).  "This constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987) overruled on other grounds by *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999).  Moreover, "***the First Amendment*** protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'"  *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545, 95 L. Ed. 2d 474, 107 S. Ct. 1940 (1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609,

619–20, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984)); *see also Conti v. City of Fremont*, 919 F.2d 1385, 1388–89 (9th Cir. 1990)."

*Lee v. City of Los Angeles*, 250 F.3d 668, 685–86 (9th Cir. 2001) (emphasis added); *De la Torre v. City of Salinas*, No. C-09-00626 RMW, 2010 U.S. Dist. LEXIS 97725, at *12 (N.D. Cal. Sept. 17, 2010) ("a single association may have intimate and expressive features and therefore be entitled to claim the protection of both the *first* and *fourteenth amendments*."). *See also Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Porter v. Osborn*, 546 F.3d 1131, 1136–42 (9th Cir. 2008) (applying claim in police shooting case).

**B.** **Plaintiffs' Second Cause of Action Sufficiently Pleads A *Monell* Claim Against the City of Vallejo and a Claim of Supervisory Liability Against Chief Kreins In His Individual Capacity**

**1.** **Plaintiffs' Second Cause of Action Sufficiently Pleads a *Monell* Claim**

In *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012), the Ninth Circuit applied the *Twombly-Iqbal* pleading standard to *Monell* claims, so that "[t]o survive a motion to dismiss, 'a bare allegation that government officials' conduct conformed to some unidentified government policy or custom' is insufficient[.]" *Shelley v. County of San Joaquin*, 954 F. Supp. 2d 999, 1009 (E.D. Cal. 2013) (quoting *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)).  A "plaintiffs' complaint must include 'factual allegations that . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Id.* (quoting *Id.*, 666 F.3d at 637).

Even under this standard, Plaintiffs have alleged facts sufficient to show that they may recover from the City under any one of the three theories of *Monell* liability identified in *Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010).  Recognized paths to *Monell* liability for

a municipality include: an (1) an unconstitutional custom or policy behind the violation of rights;

(2) a deliberately indifferent omission, such as a failure to train; and (3) a final policy-maker's

involvement in, or ratification of, the conduct underlying the violation of rights.  *Clouthier*, 591

F.3d at 1249–50.  And if this Court should hold that Plaintiffs have alleged facts to show recovery

under only one of these theories, then Plaintiffs' *Monell* claim should still survive dismissal.  *See*

*Dorger v. City of Napa*, No. 12-cv-440 YGR, 2012 U.S. Dist. LEXIS 124551, at *7 (N.D. Cal. Aug.

31, 2012) (holding that any one of the three bases for *Monell* liability identified in *Clouthier*, "if

sufficiently alleged, would preclude dismissal of the claim[.]").

First, Plaintiffs may hold the City liable "'when implementation of its official policies or

established customs inflicts the constitutional injury.'"  *Clouthier v. County of Contra Costa*, 591

F.3d 1232, 1249 (9th Cir. 2010) (quoting *Monell v. City Dep't of Soc. Servs.*, 436 U.S. 658, 708

(1978) (Powell, J. concurring) (citation omitted)).  This theory allows Plaintiffs to establish the

City's liability by "'demonstrating that . . . the constitutional tort was the result of a longstanding

practice or custom which constitutes the standard operating procedure of the local government

entity.'"  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & County of San*

*Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)).  Exactly as alleged here, "[a] custom or practice

can be inferred from widespread practices or evidence of repeated constitutional violations for

which the errant municipal officers were not discharged or reprimanded."  *Hunter v. County of*

*Sacramento*, 652 F.3d 1225, 1233–34 (9th Cir. 2011).  This also includes the failure to properly

investigate uses of excessive force.  *Id.*

Here, Plaintiffs have alleged facts showing that the City of Vallejo's police department has a

custom of using excessive force on non-threatening suspects.  The FAC states that "[b]efore the

shooting of JEREMIAH MOORE, "on information and belief Defendant Officer KENNEY and

other VPD officers had shot other individuals who did not pose an immediate threat of death or

serious injury to anyone; other victims of such shootings were also disabled and/or mentally incapacitated at the time[.]"  (Doc. No. 13, ¶ 35).

As set forth above, as of July 21, 2014, both the City of Vallejo and Sean Kenney have been named as co-defendants in nine civil rights cases involving claims of excessive force.

And between 2007 and 2012, there were thirteen fatal officer-involved shootings—including the shooting of Jeremiah Moore—by Vallejo Police Department officers. (Declaration of T. Kennedy Helm In Support of Plaintiffs' Opposition to Defendants' Motion To Dismiss And Plaintiffs' Request for Judicial Notice, Exhibits A–M.)

Lastly, the shooting of Jeremiah Moore was Defendant Kenney's third fatal shooting in five months—Defendant Kenney shot Anton Barrett on May 28, 2012; Mario Romero on September 2, 2012; and Jeremiah Moore on October 21, 2012.  Alex Emslie, *Questions Surround Surge in Vallejo Police Shootings*, KQED News Fix (May 20, 2014), http://blogs.kqed.org/newsfix/vallejo-police-officer-named-in-three-fatal-shootings.

Further, Plaintiffs have alleged that despite knowing that Kenney and other officers had shot suspects that posed no threat to them, "VPD Policy makers and the VPD took no action to correct deficiencies in VPD training programs and VPD policies and procedures that allowed and encouraged such unlawful uses of deadly force, and specifically took no action to adequately investigate, supervise, discipline, or train Defendant KENNEY and other VPD officers."  (Doc. No. 13, ¶ 35).  These factual allegations of a custom or practice entitle Plaintiffs' *Monell* claim to survive dismissal, because they are almost identical to those in *IDC v. City of Vallejo*, No. 2:13-cv-1987 DAD, 2014 U.S. Dist. LEXIS 78487 (E.D. Cal. June 6, 2014), and the cases cited therein, in which the court declined to dismiss the plaintiff's *Monell* claim predicated on a custom-or-practice theory.  *See also, Hunter, supra.*

In *IDC*, the plaintiff, a minor, also sued the City of Vallejo and Officer Kenney, along with another officer, for allegedly using excessive force on him by "beating, choking and pepper spraying plaintiff before ultimately placing him under arrest."  *IDC*, U.S. Dist. LEXIS 78487, at \*3– \*4.  There, as here, the City moved to dismiss the *Monell* claim, arguing that it was "'unsupported by any facts.'"  *IDC*, 2014 U.S. Dist. LEXIS 78487, at \*13 (quoting MTD (Dkt. No. 27) at 6).  The *IDC* plaintiff's factual allegations underlying his *Monell* claim closely resemble what Plaintiffs have pleaded here: IDC alleged, after the criminal charges against him were summarily dropped when his attorney filed a *Pitchess* motion seeking Kenney's personnel file, that, on information and belief, Defendant Kenney had "engaged in repeated acts of excessive force, misconduct, and civil rights violations' prior to the incident at issue here."  *IDC*, 2014 U.S. Dist. LEXIS at \*17 (citation omitted).  The *IDC* plaintiff also alleged that "despite having knowledge of the repeated use of excessive force by Kenney and Thompson, the City of Vallejo and the Vallejo Police Department allegedly failed to take measures to prevent their repeated misconduct."  *IDC*, 2014 U.S. Dist. LEXIS 78487 at \*17 (citation omitted).

The *IDC* court, "[a]pplying the standards applicable to a motion to dismiss," held that "the allegations found in the amended complaint state[d] a cognizable *Monell* claim."  *IDC*, 2014 U.S. Dist. LEXIS 78487, at \*18 (citing *Howard v. City of Vallejo*, No. CIV. S-13-1439 LKK/KJN, 2013 U.S. Dist. LEXIS 161926, at \*8–\*9 (E.D. Cal. Nov. 13, 2013) (holding that the plaintiff's allegations, "on information and belief," that the City failed to discipline officers for their prior repeated use of excessive force were "sufficient to give the City fair notice of plaintiff's claim that the City ha[d] a policy of deliberate indifference to a pattern and practice of excessive use of force and other violations of the constitutional rights of citizens by City police officers, particularly minority citizens, that [wa]s manifested in its failure to discipline or retrain officers involved in such incidents."); *see also Bass v. City of Fremont*, No. C12-4943 TEH, 2013 U.S. Dist. 32590, at

*11–*12 (N.D. Cal. Mar. 8, 2013) (holding that the plaintiff's allegations—both that the defendant officers were engaged in a pattern and practice of using unnecessary and excessive force and falsely reporting crimes, and that the municipality demonstrated deliberate indifference to this pattern and practice of constitutional violations by failing to take necessary appropriate or adequate measures to prevent future occurrences—were "plausible" and "sufficient to give the municipal entity notice of the specific policies, customs, and practices that [we]re alleged to have caused the deprivation of [the plaintiff's] rights[.]"); *Wise v. Nordell*, No. 12-CV-1209 IEG (BGS), 2012 U.S. Dist. LEXIS 128656, at *24 (S.D. Cal. Sept. 10, 2012) (holding that the plaintiffs' allegations that a county employee had acted contrary to county policy and violated their constitutional rights, and that he had acted in this manner for years, and that the county had condoned his conduct, "sufficiently alleged a claim for municipal liability under *Monell*."); *East v. City of Richmond*, No. C 10-2392 SBA, 2010 U.S. Dist. LEXIS 117367, at *11 (N.D. Cal. Nov. 3, 2010) (holding that the plaintiffs' allegation that the Police Chief knew of other, repeated acts of misconduct by the defendant officers, but failed to take any corrective action against these officers, was "sufficient to state a plausible claim for liability under *Monell*.").  Because Plaintiffs' factual allegations so closely resemble those of the plaintiffs in *IDC*, *Howard*, *Bass*, *Wise*, and *East*, Defendants' motion to dismiss Plaintiffs' *Monell* claim, under a custom-or-practice theory, should be denied.

Second, the City of Vallejo "may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy."  *Clouthier*, 591 F.3d at 1249. One such omission is the City's failure to train its police officers, where "'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, Plaintiffs have alleged that the City has failed to train its officers to "use appropriate and generally accepted law enforcement policies, procedures, and training in handling mentally ill, emotionally disturbed and/or medically or developmentally disabled persons" (Doc. No. 13, ¶ 36(c.)).  *See Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1225–26, 1230 (9th Cir. 2014) (noting such standards and training at p. 1225).  Additionally, Plaintiffs have alleged that Kenney and other officers failed "to accommodate persons with disabilities, particularly Autism, mental illness, and/or emotional disturbance." (Doc. No. 13, ¶ 36(f)).  Plaintiffs have also alleged, on information and belief, that before shooting Jeremiah, Kenney and other officers had "shot other individuals who did not pose an immediate threat of death or serious injury to anyone[,]" and who "were also disabled and/or mentally incapacitated at the time." (Doc. No. 13, ¶ 35).  Relatedly, Plaintiffs have alleged that the City has failed "to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, deadly force, unlawful and unreasonable force, unlawful seizures, and/or handling of mentally ill, developmentally disabled, or emotionally disturbed persons[.]" (Doc. No. 13, ¶ 36(g)(i)).  These allegations resemble those in *Dorger* which survived a motion to dismiss.  *Dorger v. City of Napa*, No. 12-cv-440 YGR, 2012 U.S. Dist. LEXIS 124551, at *17 (N.D. Cal. Aug. 31, 2012).

In *Dorger*, the plaintiffs alleged that the decedent's shooting stemmed from a failure to train officers who might come into contact with individuals in mental-health crisis or otherwise diminished capacity, and that the need for training to avoid mishandling of these types of situations had been obvious to the City for years before the shooting.  *Dorger*, 2012 U.S. Dist. LEXIS 124551, at *10.  The *Dorger* plaintiffs also alleged that the failure of the officers on scene to follow instructions to de-escalate the situation and not to use deadly force evidenced a lack of adequate training.  *Id.*  Finally, the plaintiffs alleged, as Plaintiffs have here, that other complaints had been made against the City's police department for use of excessive force and for failure to respond

appropriately to persons in mental-health crisis.  *Id.*  The *Dorger* court held that the facts alleged stated a "plausible basis for finding that the City knew of the need for training with respect to excessive force and handling crisis situations involving persons with mental health problems."  *Id.*  "They sufficiently state a basis for finding that the City was aware of and deliberately indifferent to the need for such training."  *Id.*  So, too, here.

Alternatively, a municipality's failure to institute a policy in the face of an obvious need for such a policy to prevent constitutional violations – i.e., a "policy … of inaction," also supports *Monell* liability.  *Oviatt v. Pearce*, 954 F.2d 1470, 1474–5, 1477 (9th Cir. 1991).  "This occurs when the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need."  *Oviatt*, 954 F.2d at 1475 (quoting *City of Canton*, 489 U.S. at 390).

Accordingly, at paragraph 37(j) of the First Amended Complaint, Plaintiffs alleged an unconstitutional policy:

> (j)     To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (i) above, with deliberate indifference to the rights and safety of Plaintiffs and the public, and in the face of an obvious need for such policies, procedures, and training programs.

(Doc. No. 13, ¶ 37(j)).  It would not be possible to plead the absence of something with any more particularity than that.

Third, and finally, Plaintiffs may hold the City of Vallejo liable for their son's death by showing that an official with final policy-making authority "'ratified a subordinate's unconstitutional decision or action and the basis for it.'"  *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citations omitted)).  To show ratification, a plaintiff must prove that the "authorized policymakers approve a subordinate's

decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  "Ordinarily, ratification is a question for the jury." *Iopa*, 176 F.3d at 1238–39.  But "ratification of conduct, and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident." *Dorger*, 2012 U.S. Dist. LEXIS 12551, at *14.

Here, Plaintiffs have alleged that the City "took no action to adequately investigate, supervise, discipline, or train" Kenney and other officers.  (Doc. No. 13, ¶ 35).  Plaintiffs have also alleged that the City and Kreins have failed to investigate and discipline Defendant Kenney and Does 1–20.  (Doc. No. 13, ¶ 37).  Finally, on information and belief, Plaintiffs have alleged that the details of Jeremiah's shooting have been revealed to "the authorized policy makers within the City of Vallejo and the VPD, and that such policy makers have direct knowledge of the fact that the JEREMIAH MOORE shooting was not justified[.]"  (Doc. No. 13, ¶ 38).  These factual allegations "go beyond just a bare assertion of failure to reprimand[,]" and so "are sufficient to state a plausible basis for a *Monell* claim against the City based upon ratification." *Dorger*, 2012 U.S. Dist. LEXIS 12551, at *16.  Plaintiffs have alleged facts sufficient at this stage to give the City of Vallejo fair notice of its *Monell* claim, and this Court should therefore deny the City's motion to dismiss it.

**2.      Chief Kreins Has Not Moved to Dismiss The Supervisory-Liability Claim Against Him In His Individual Capacity Contained In Count Two**

Count Two's heading states that it is for "Municipal *and Supervisory* Liability."  (Doc. 13 p. 10) (emphasis added).  Defendants' motion to dismiss only attacks the sufficiency of the *Monell* claim; as the title of Count Two makes clear, Plaintiffs have also alleged a claim for supervisory liability against Chief Kreins in his individual capacity—which is a different claim from the *Monell* claim.  Therefore, Plaintiffs' supervisory-liability claim against Kreins is not subject to dismissal,

1    and this Court should disregard any challenge to this claim that Kreins might raise in his reply brief.

2    *Zamani*, 491 F.3d at 997.

3              **C.    Plaintiffs' Government Tort Claim Contains Facts Supporting Counts
                       Four, Five, Six, and Seven, Which Contain Well-Pleaded Claims Under
4                      California Law.**

5              Counts Four through Seven assert claims arising under California law.  Count Four alleges a

6    violation of the Bane Act, Cal. Civil Code § 52.1 (violation of rights by threats, intimidation, or

7    coercion), against Defendants Kenney (and Does 1–20), and the City, vicariously.  (Doc. No. 13,

8    ¶¶54–58).  Count Five alleges negligence against all Defendants.  (Doc. No. 13, ¶¶59–66).  Count

9    Six alleges Assault and Battery against Defendants Kenney, Does 1–20, and the City, vicariously.

10   (Doc. No. 13, ¶¶67–70).  And, Count Seven alleges a violation of California Civil Code § 51.7

11   (subjection to violence, or threat of violence, due to membership in a protected class) by Defendants

12   Kenney, Does 1–20, and the City of Vallejo, vicariously.  (Doc. No. 13, ¶¶71–74).

13             Defendants claim that because Plaintiffs did not specifically mention these legal claims from

14   the Fourth, Fifth, Sixth and Seventh Causes of Action in their government tort claim, they may not

15   bring them in this lawsuit.  (Doc. No. 21, p. 16).  Defendants argue that Plaintiffs' government tort

16   "claim's facts are premised on wrongful death[,]"  (Doc. No. 21, p. 17), and that Plaintiffs' Fourth,

17   Fifth, Sixth, and Seventh Causes of Action "[i]ntroduce a shift in theory from the factual scenario of

18   a 'wrongful death claim' to the factual scenarios and *theories of liability* for the Unruh Act,

19   Negligence, Assault and Battery, or the Bane Act."  (Doc. No. 21, p. 18).

20             The case on which Defendants rely, *Nelson v. State of California*, 139 Cal. App. 3d 72

21   (1982), is distinguishable from this case.  The *Nelson* plaintiff filed a tort claim based strictly on

22   medical malpractice and later alleged a cause of action under Cal. Gov't. Code § 845.6 based on an

23   alleged failure to *summon* emergency medical care for a prisoner.  *Id*. at 80, 82.  The California

24   Court of Appeal held that medical malpractice allegations are not equivalent to allegations of a

failure to summon medical care and held that the tort claim did not fairly reflect the allegations in the amended complaint.  *Id*. at 79–80.  The *Nelson* Court narrowly ruled that "**[i]f a plaintiff relies on more than one theory of recovery** against the state, each cause of action must have been reflected in a timely claim."  *Nelson*, 139 Cal. App. 3d at 79 (emphasis added).

But *Nelson* does not apply to Plaintiffs' government tort claim because Plaintiffs, proceeding pro se, put forth no legal theory of recovery in their government tort claim.  Nowhere does the phrase "wrongful death" even appear except in Defendants' motion.  Rather, Plaintiffs completed the City of Vallejo's Claim for Damages Form and stated, in response to the question "[w]hat did City or employee[s] do to cause this loss, damage, or injury[,]" that "[t]he police department shot our son while he was unarmed causing his death."  (Doc. No. 21, Ex. 1).  Thus, Defendants could not have been misled by the omission of some legal theory among other specific theories that were claimed.

More importantly, the Law Revision Commission Comments to Cal. Gov. Code § 910.4 (Forms) explain:

> The amendment makes it clear that a claim presented on an officially prescribed form (such as the State Board of Control form) is sufficient if the information given substantially satisfies the requirements *either* of Sections 910 and 910.2 *or of the form*.

(Emphasis added).  "Section 910.4 permits the public entity to provide forms for such claims and provides that '[a] claim presented on a form provided pursuant to this section shall be deemed to be in conformity with *Sections 910* and *910.2* if the claim complies substantially with the requirements of the form or with the requirements of *Sections 910* and *910.2*.'"  *Martinez v. County of Los Angeles*, 78 Cal. App. 3d 242, 244 (1978) (compliance with county's form deemed sufficient to preserve tort claims).

By complying with the City of Vallejo's form, without any notice of deficiency by the City of Vallejo, Plaintiffs fully complied with California law.  *Martinez, supra.*  Additionally, any lack

of detail in the Plaintiffs' tort claim was due to the way the question on the form was phrased, *id.*, and that Defendant City of Vallejo refused to provide Plaintiffs with any information at all concerning the circumstances of this shooting.  (Doc. 13, FAC, ¶9).  Defendants cannot be permitted to conceal virtually all information in their sole control relating to this shooting, and then complain—after failing to notify Plaintiffs of any deficiency in their tort claim—that the answer to the question on their official form was a little vague.

A claim against a public entity should be liberally construed to allow full adjudication on the merits as long as the policies of the statutes are effectuated.  *Minsky v. City of Los Angeles*, 11 Cal. 3d 113, 123 (1974).  The policy behind these statutes is to give a public entity enough information to allow it to adequately investigate and potentially settle the claim.  *City of San Jose v. Super. Ct.*, 12 Cal. 3d 447, 455 (1974).  Consequently, a claim is not held to the same standards of detail and specificity as a pleading.  *Stockett v. Ass'n of Calif. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004).  Instead, a claim need only <u>fairly describe</u> what the public entity allegedly did or did not do.  *Id.*

The California Supreme Court has explained:  "As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions, the claims statute should not be applied to snare the unwary where its purpose has been satisfied."  *Id.* (internal citations and quotations omitted).

Since *Nelson*, the California Supreme Court has explained that a claim "need not specify each particular act or omission later proven to have caused the injury."  *Stockett,* 34 Cal. 4th at 447 (citing *Blair v. Super. Ct. (Dept. of Transp.)*, 218 Cal. App. 3d 221, 225 (1990)).  A plaintiff is not barred from asserting in the complaint additional legal theories or details to the facts alleged in the claim as long as the complaint is based on the same fundamental actions or failure to act by the persons and at the times specified in the claim.  *Id.*  Courts have generally only found the complaint

barred where "there was a complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim." *Blair*, 218 Cal. App. 3d at 226.

Here, Plaintiffs' government tort claim told the City of Vallejo exactly what it had done wrong—shoot and kill their son Jeremiah.

Defendants rely upon a misreading of *Turner v. State of California*, 232 Cal. App. 3d 883 (1991), which stands for the proposition that a plaintiff may not base a cause of action on facts that the plaintiff failed to mention in the government claim. In *Turner*, someone shot the plaintiff in the elbow as he was walking in a parking lot owned and operated by the State of California. *Id.* at 887. The plaintiff alleged in his government claim that the state failed to warn him of—or take adequate precautions against—both gang-related violence in the parking lot and the reckless conduct of security officers in firing the shot that hit him. *Id.* at 889–90. The claim had no mention of "inadequate lighting" as the factual basis for any claim. *Id.* at 889. The Court of Appeal held that the tort claim did not preserve claims later filed in the lawsuit based on inadequate lighting, as opposed to the factual theories that were set forth in the tort claim. *Id.* at 890. The plaintiff had alleged in his government claim that "known criminal activity, not inadequate lighting" had caused his injury; therefore, "the new allegations constitute[d] a complete shift in theory from what the defendants are alleged to have done to cause plaintiff's injuries." *Id.* at 890–91.

After *Turner*, the California Supreme Court clarified that "[a] complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.'" *Stockett*, 34 Cal. 4th at 447 (quoting *Stevenson v. San Francisco Hous. Auth.*, 24 Cal. App. 4th 269, 278 (1994)). "Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim' have courts

1   generally found the complaint barred." *Stockett*, 34 Cal. 4th at 447 (quoting *Blair*, 218 Cal. App. 3d
2   at 226)).

3       Here, there has been no shift at all in Plaintiffs' factual allegations: they alleged in their
4   government claim that the Vallejo police shot and killed their son, and they alleged the same facts,
5   with more detail (as required by *Iqbal* and *Twombly*), in their First Amended Complaint (FAC).

6        Moreover, the FAC's state-law claims fairly reflect the facts in Plaintiffs' government
7   claim—that unknown officers from the City of Vallejo's police department shot and killed their son.
8   The fact pattern of a fatal officer involved shooting gives rise to claims for negligence, assault and
9   battery, and for a violation of California Civil Code § 52.1.
10

11      An unlawful seizure or use of excessive force also will also support a negligence claim
12  under California law.  *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 513–14 (2009)  (state law
13  negligence claim can be based on the same standard as Fourth Amendment excessive force claim);
14  *Robinson v. Solano County*, 278 F.3d 1007, 1016–17 (9th Cir. 2002) (en banc) (constitutional
15  violations support state tort claims for false arrest and imprisonment, assault and battery, and
16  negligence, and there is no immunity for such claims); *Blankenhorn v. City of Orange* 485 F.3d
17  463, 486–88 (9th Cir. 2007)  (same).
18

19      A use of excessive deadly force under the Fourth Amendment also satisfies all elements of a
20  Bane Act claim, including the requisite coercive act.  *Chaudry v. City of Los Angeles*, 751 F.3d
21  1096, 1105 (9th Cir. 2014) ("[t]he elements of the excessive force claim under *§ 52.1* are the same
22  as under *§ 1983*.").
23

24      In addition, under California Civil Code § 51.7, all people in California have the right to be
25  free from any violence, or intimidation by threat of violence, committed against their person
26  because of any characteristic listed in California Civil Code § 51(b) or (e), including disability.  To
27  state a claim under California Civil Code § 51.7, a plaintiff must allege facts satisfying four
28

elements: (1) that the defendant threatened or committed violent acts against the plaintiff or his property; (2) that a motivating reason or the defendant's conduct was his perception of the plaintiff's disability; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007) (quoting CACI No. 3023) (quotation marks omitted)).

Here, Plaintiffs have alleged facts to survive a motion to dismiss. Count Seven, containing their claim under California Civil Code § 51.7, incorporates by reference the rest of the complaint. (Doc. No. 13, ¶ 71). As to (1), Plaintiffs have alleged that Kenney, Does 1–20, and, vicariously, the City, have shot and killed their son. (Doc. No. 13 ¶¶ 18–25). As to (2), Plaintiffs have alleged facts to support their contention that violence was "committed against Jeremiah Moore [ ] because of his disability and/or psychiatric condition." (Doc. No. 13 ¶ 72). Specifically, the FAC alleges that, before arriving, the Defendant VPD officers had been informed and knew that Jeremiah suffered from developmental disabilities including an Autism-Spectrum Disorder, mental illness, and/or emotional disturbance. (Doc. No. 13, ¶ 19). Plaintiffs have alleged facts showing that Jeremiah was obviously suffering from a disability, stating that Jeremiah "suffered from an autism spectrum disorder" which, when the officers were commanding him to get on the ground and were pointing guns at him, "caused him to move his hands and arms when he was nervous." (Doc. No. 13, ¶21). Finally, as to (3) and (4), Plaintiffs have pled facts showing that their son was harmed (killed), and that the conduct of Kenney, Does 1–20, and the City were substantial factors in his death. (Doc. No. 13, ¶¶ 18–24). Therefore, Plaintiffs have adequately pled a claim for Kenney, Does 1–20, and the City having violated section 51.7.

## VI.   CONCLUSION

Plaintiffs have pled enough facts for all of their claims to show that they are entitled to relief under the *Twombly-Iqbal* plausibility standard. Defendants' motion to dismiss should be denied in

1   its entirety.  If the Court does, however, grant their motion as to one or more of their claims, then

2   Plaintiffs ask that this Court grant them leave to amend them.

3

4   DATED:  August 5, 2014                    HADDAD & SHERWIN

5

6                                            /s/ Michael J. Haddad

7                                            MICHAEL J. HADDAD

8                                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28